IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOSEPH D. MONTI,**<br><br>        Plaintiff,<br><br>    v.<br><br>**CAROLYN W. COLVIN,**<br>Commissioner of Social Security,<br><br>        Defendant. | Case No. 6:15-cv-01499-SI<br><br>**OPINION AND ORDER** |

Kathryn Tassinari and Robert Baron, HARDER, WELLS, BARON, & MANNING, P.C., 474 Willamette Street, Suite 200, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hébert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF OREGON, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Daphne Banay, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Joseph D. Monti ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for Social Security Income and Children's Disability Insurance Benefits. For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

OPINION & ORDER – 1

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

**A. Plaintiff's Application**

Plaintiff applied for Social Security Income and Children's Disability Insurance Benefits in June and July 2009, respectively, alleging disability as of February 23, 2006. AR 47, 178-93,

OPINION & ORDER – 2

211.[1] Born in 1989, Plaintiff was 16 years old on the alleged disability onset date and 25 years old at the time of the second administrative hearing. AR 178, 744. He alleges disability due to "[d]ifficulty walking with nerve damage to the left foot due to a gun shot wound to the back," posttraumatic stress disorder ("PTSD"), attention deficit/hyperactivity disorder ("ADHD"), depression, learning disorder, and mathematics disorder. AR 214; Pl.'s Opening Br. 1. The Commissioner denied his application initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). AR 79-80, 83-92, 95-99, 103. After an administrative hearing, an ALJ issued an adverse decision on February 24, 2012. AR 21-75. The Appeals Council denied Plaintiff's timely request for review, and Plaintiff filed a judicial complaint. AR 1-6.

On April 28, 2014, the Honorable Malcolm F. Marsh affirmed the ALJ's treatment of Plaintiff's subjective symptom testimony and the medical evidence relating to Plaintiff's physical functioning. AR 816-25. Judge Marsh, however, found that the ALJ erred regarding the opinion of examining doctor Judith Eckstein, Ph.D. AR 825-29. Accordingly, Judge Marsh remanded the matter for further proceedings. AR 828-29.

On February 24, 2015, a second administrative hearing was held. Plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). AR 743-86. On April 16, 2015, the ALJ issued a second decision, again finding Plaintiff not disabled. AR 720-33. Plaintiff now seeks review in this Court.

---

[1] The record before the Court constitutes nearly 1,200 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court generally will cite only to the transcript page or pages on which that information first appears.

OPINION & ORDER – 3

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must

> evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.
>
> 4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.
>
> 5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

OPINION & ORDER – 5

## C. The ALJ's Decision

The ALJ performed the sequential analysis. AR 720-33. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 722. At step two, the ALJ concluded Plaintiff had the following severe impairments: "status post gunshot wound in the back, attention deficit hyperactivity disorder, learning disorder, mathematics disorder, dysthymia, depressive disorder NOS, rule out bi-polar disorder (most recent episode depressed), port-traumatic stress disorder, and cannabis dependence." AR 723. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. AR 724.

The ALJ next assessed Plaintiff's RFC and found that he could perform sedentary work with the following exceptions:

> the claimant is limited to occasional climbing of ramps and stairs, although precluded from climbing ladders and scaffolds. The claimant is also limited to occasional balancing, stooping, kneeling, crouching, and crawling. In addition, he is limited to no exposure to hazards, such as unprotected heights and moving mechanical parts. The claimant is limited to simple and routine tasks consistent with unskilled work, as defined by the Dictionary of Occupational Titles. The claimant is further limited to occupations that do not require the use of mathematics. He is further limited to occasional interaction with supervisors and coworkers and superficial interaction with the public (defined as perfunctory).

AR 726. At step four, the ALJ found Plaintiff had no past relevant work. AR 731. At step five, the ALJ concluded that, based on the testimony of a VE, Plaintiff could perform jobs existing in significant numbers in the national and local economy, including small products assembler, electronics assembler, and computer controlled color photo printer operator. AR 731-32. Thus, the ALJ found Plaintiff not disabled. AR 733.

**DISCUSSION**

Plaintiff argues the ALJ erred by: (1) improperly assessing the medical opinion evidence; and (2) rendering an invalid RFC and step five finding.

**A. Medical Opinion Evidence**

Plaintiff contends that the ALJ erred in weighing the medical opinions of Dr. Eckstein and examining psychologist Scott Alvord, Psy.D. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). An examining doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

### 1. Dr. Eckstein

Dr. Eckstein examined Plaintiff in November 2009. AR 517-22. Her evaluation consisted of a clinical interview, administration of the Wechsler Adult Intelligence Scale, and the review of records from Brain Goldman, M.D., dated June 1, 2004. AR 517. Dr. Eckstein assessed borderline intellectual functioning and diagnosed Plaintiff with ADHD, dysthymia, cannabis

dependence, mathematics disorder, and learning disorder. AR 519-22. She recommended that Plaintiff undergo counseling. AR 522.

In September 2012, Dr. Eckstein wrote a letter at the request of Plaintiff's attorney. AR 1133-35. Although Dr. Eckstein did not re-examine Plaintiff, she reviewed her original report as well as additional documents, including Plaintiff's school records and written lay statements from Plaintiff's friend and mother. *Id.* In the "Discussion" section of her letter, Dr. Eckstein wrote:

> Mr. Monti's homelessness as well as avoidance of people since he was shot with reported paranoia and anxiety while he is in groups would likely make it difficult for Mr. Monti to work around others without being distracted as well as the likelihood of Mr. Monti becoming easily irritated and displaying outbursts of temper as have been adequately documented in his past.
>
> While neither of Mr. Monti's disabilities, physical and psychological, may by themselves result in the likelihood of him being determined disabled, the combination of both his chronic pain and limited mental capabilities [given his] borderline range of intellectual functioning, will very likely make it difficult for Mr. Monti to ever be financially self supporting on a sustained basis. Counseling is recommended for Mr. Monti to deal with the Post-Traumatic sequelae from his shooting as well as to learn better executive functioning skills to handle his emotional difficulties.

AR 1135.

In a corresponding "Mental Residual Function Capacity Report," Dr. Eckstein checked boxes reflecting that Plaintiff would be "markedly limited"[2] in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest

---

[2] The form defined "markedly limited" as "[a] limitation which precludes the ability to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, five days a week, or an equivalent work schedule." AR 1136.

OPINION & ORDER – 8

periods, accept instructions and respond appropriately to criticism from supervisors, get along appropriately with co-workers or peers without distracting them or exhibiting behavioral extremes, and set realistic goals and make plans independently of others. AR 1136-37.

The ALJ afforded "[p]artial weight" to Dr. Eckstein's opinion for five reasons: (1) "[s]he combines an opinion regarding physical conditions ('chronic pain') with mental health issues [and] such a determination is not within the scope of her expertise"; (2) it "is not supported by any explanation"; (3) she "fails to put her statements in terms of functional limitations"; (4) it "was made before the claimant engaged in fairly consistent, although non-SGA, employment in 2013 and in 2014"; and (5) it "lacks consistency with the overall medical record as it is based on third party reports that are written to advocate for the claimant, rather than being impartial observations." AR 729.

As a preliminary matter, the ALJ's decision does not distinguish between Dr. Eckstein's 2009 and 2012 reports. Thus, it is unclear whether the ALJ reviewed the record in its entirety. *Id.* This is significant because neither the prior ALJ nor Judge Marsh reviewed or otherwise discussed Dr. Eckstein's September 2012 letter on appeal, as it was not in existence at the time of the prior ALJ's February 2012 decision. AR 18-36, 811-29. In addition, the ALJ failed to acknowledge the "Mental Residual Function Capacity Report." *Compare* AR 729 (the ALJ concluding that Dr. Eckstein's opinion is not phrased "in terms of functional limitations"[3] or "supported by any explanation"), *with* AR 517-22, 1133-38 (Dr. Eckstein's November 2009

---

[3] The ALJ's rejection of Dr. Eckstein's opinion for this reason is especially curious given that "it is the responsibility of the ALJ, not the claimant's physician, to determine [the RFC] and the ALJ's findings of RFC need not correspond precisely to any physician's findings." *Davis v. Astrue*, Case No. 1:10-cv-01452-CL, 2012 WL 4005553, *9 (D. Or. June 12), *adopted by* 2012 WL 3614310 (D. Or. Aug. 21, 2012) (citations and internal quotations omitted); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (the ALJ is responsible for resolving ambiguities in the record and translating the claimant's impairments into concrete functional limitations in the RFC).

OPINION & ORDER – 9

examination findings and objective test results, which expressly formed the basis of her September 2012 "Mental Residual Function Capacity Report"); *see also Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014) (reversing the ALJ's rejection of medical opinion evidence where "[t]he check-box forms did not stand alone: they reflected and were entirely consistent with the hundreds of pages of treatment notes"). Given these circumstances, the Court cannot conclude that the ALJ properly evaluated the medical evidence. *See Vincent v. Heckler*, 739 F.3d 1393, 1395 (9th Cir. 1984) (the ALJ must explain the rejection of all relevant and probative evidence). This reason is sufficient to conclude that the ALJ erred in regard to the consideration of Dr. Eckstein's opinion.

Moreover, the ALJ's conclusion that Dr. Eckstein's opinion lacks consistency with the medical record and does not relate to her area of expertise is not supported by substantial evidence. AR 729. Outside of attending assessments with Drs. Eckstein and Alvord, and one counseling session in 2013 through Douglas County Mental Health, Plaintiff did not seek any treatment for his allegedly disabling mental impairments, and the ALJ relied on this as a basis to find Plaintiff not fully credible. AR 728. Regardless, the little medical evidence that does exist is largely consistent with both Dr. Eckstein's report and the lay witness testimony of Plaintiff's friend.[4] *See*, *e.g.*, AR 222-29, 880, 1145-56, 1157-70. Further, the fact that Dr. Eckstein noted, but did not formally evaluate, Plaintiff's physical problems does not invalidate her opinion. *See* AR 1135 (Dr. Eckstein describing Plaintiff's "chronic pain issues [as] beyond the scope of this evaluation to address"). This is especially true given that her "Mental Residual Function Capacity Report" was based exclusively on Plaintiff's mental impairments. AR 1137-38.

---

[4] As the ALJ noted, the lay evidence from Plaintiff's mother provides "[v]ery little information . . . about any limitations," as it instead "appears to [be] a litany of complaints about various issues unrelated to disability, such as complaints against an attorney, the illness of her mother, and the release of her son's shooter from jail." AR 730-31; *see also* AR 329-32, 345-71.

OPINION & ORDER – 10

Similarly, the fact that Plaintiff worked part-time after Dr. Eckstein authored her September 2012 letter is not a legally adequate basis to reject her opinion. As the ALJ acknowledged, Plaintiff worked from 2008 through 2011, and again in 2013 and 2014, but not at substantial gainful levels. AR 723, 729. Plaintiff testified that he was employed by a temporary agency during 2013 and 2014, but was terminated from each position due to his inability to sustain the requisite pace, operate within a set schedule, or take instruction from supervisors. AR 755-56, 758-69. As noted above, although the ALJ found Plaintiff not fully credible and Plaintiff does not challenge that finding in this appeal, there is no evidence in the record that contradicts the Plaintiff's statements made during the hearing on this issue. Accordingly, without more, the ALJ's conclusion that Plaintiff's subsequent part-time work undermines Dr. Eckstein's opinion is insufficient. Therefore, the ALJ erred in affording less weight to Dr. Eckstein's opinion.

### 2. Dr. Alvord

In August 2014, Dr. Alvord performed a single evaluation of Plaintiff, which consisted of a clinical interview, a mental status examination, and a review of Dr. Goldman's June 2004 report. AR 1145. Dr. Alvord diagnosed Plaintiff with PTSD, "ADHD by history," and depression; Dr. Alvord also listed bi-polar disorder as a rule out possibility. AR 1149. Dr. Alvord opined that Plaintiff would be "mildly to moderately impaired [in his] ability to follow instructions [and] to concentrate, persist and pace." AR 1147. The doctor explained that Plaintiff would "struggle to maintain consistency in an occupational setting given anxiety, as well as deferred pain issues and emotional lability, irritability, anger, etc." AR 1149. On a corresponding "Medical Source Statement Of Ability To Do Work-Related Activities (Mental)," Dr. Alvord

OPINION & ORDER – 11

endorsed "marked" limitation in only one category, the ability to interact appropriately with supervisors.[5] AR 1152-56.

The ALJ gave "little weight" to Dr. Alvord's opinion because it was "internally inconsistent." AR 729. Specifically, the ALJ found that the marked limitation assessed by Dr. Alvord was unwarranted because Plaintiff "referred to only doing work 'under the table,' which is inconsistent with his posting of earnings," and "nothing in Dr. Alvord's examination relates to the claimant's interactions with supervisors, as compared to coworkers or the public." *Id.*

Initially, the fact that Plaintiff reported to Dr. Alvord that he "sometimes [does] under the table stuff" does not establish, as the ALJ implies, that Dr. Alvord's opinion was premised on incomplete information. AR 1146. Notably, Dr. Alvord did not appear to request a full work history from Plaintiff; rather, his examination focused on whether Plaintiff was "currently working" and, if not, what issues contributed to his lack of employment. AR 1146. Dr. Alvord examined Plaintiff in the latter part of 2014; Plaintiff posted $2,427.45 in earnings that year, which equates to less than two weeks of full-time, minimum wage labor. AR 723, 1145. As such, nothing in the record contradicts Plaintiff's statement to Dr. Alvord that he was not currently working or otherwise undermines the accuracy of Dr. Alvord's findings.

Additionally, substantial evidence does not support the ALJ's determination that Dr. Alvord failed to solicit information regarding Plaintiff's ability to interact with supervisors. AR 729. Indeed, Plaintiff "endorsed a history of irritability, opposition to authority, peer conflicts and academic struggles," as well as being "frequently triggered to anger and panic." AR 1146-47. Dr. Alvord also noted that Plaintiff's records revealed that "he was frequently

---

[5] This form defines "marked" as "serious limitation [and] a substantial loss in the ability to effectively function." AR 1152. Dr. Alvord also checked boxes reflecting moderate restriction in some areas; however, per the form, a moderately limited individual is "still able to function satisfactorily." *Id.*

OPINION & ORDER – 12

disciplined" while in school and "fired, a lot." AR 1146. This evidence pertains to Plaintiff's ability to interact with supervisors and reinforces Dr. Alvord's marked limitation.

In sum, the ALJ committed legal error that was not harmless in weighing the medical opinion evidence from Drs. Eckstein and Alvord. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2012) (only mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

## B. RFC and Step Five Finding

Plaintiff argues that the ALJ's RFC and step five finding are erroneous because the dispositive hypothetical question posed to the VE did not account for all of his limitations. This argument is well-taken. As discussed herein, the ALJ wrongfully rejected the opinion of Drs. Eckstein and Alvord. Because the ALJ failed to account for the concrete work-related limitations of function described by these medical sources in Plaintiff's RFC, the ALJ erred in relying upon the VE's testimony. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (if a VE's "hypothetical does not reflect all the claimant's limitations, then the . . . testimony has no evidentiary value") (citations and internal quotation marks omitted). As a result, the ALJ's ultimate decision is not supported by substantial evidence and remand is necessary.

## C. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful

purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The United States Court of Appeals for the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.
>
> If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

OPINION & ORDER – 14

As discussed in this Opinion and Order, the ALJ erred by failing to provide legally sufficient reasons, supported by substantial evidence, for disregarding Dr. Eckstein's and Dr. Alvord's opinions. The record before this Court, however, is ambiguous regarding the extent of Plaintiff's allegedly disabling mental impairments. On the one hand, Plaintiff endorsed debilitating social anxiety and problems focusing; Plaintiff's school records show longstanding issues with maintaining concentration and impulse control, and the traumatic shooting that Plaintiff sustained on the alleged onset date supports the existence of ongoing psychological conditions, such as PTSD and depression. AR 517-22, 588-600, 808, 933-1140, 1145-70. On the other hand, Plaintiff was consistently employed, to an extent, during 2013, engaged in a wide slate of daily activities, and regularly socialized with friends and engaged in romantic relationships. AR 222-37, 359, 508-09, 518, 521, 573, 927, 1145, 1147. In fact, although the ALJ did not rely on this reasoning as part of his decision, the Court notes that Plaintiff's employment records demonstrate that, between May and November 2013, he worked full-time, sometimes in excess of 60 hours per week. AR 927. Plaintiff also testified at the hearing that "if I tell myself to do something, then I usually get it done." AR 773. This evidence suggests that Plaintiff is capable of maintaining a routine, engaging in socially appropriate behavior, taking instruction, and staying on task when he wants to or believes he needs to.

In light of these ambiguities, further proceedings are required to resolve this case. Upon remand, the ALJ must consult a medical expert to review the entire record and determine the onset date of any functional limitations, and, if necessary, reformulate Plaintiff's RFC and obtain additional VE testimony.

## CONCLUSION

The Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

**IT IS SO ORDERED**.

DATED this 18th day of August, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

OPINION & ORDER – 16